## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,

v.

EDDIE RICHARSON, et al.

Case No. 94-CR-00187-1 & -2

Judge John Robert Blakey

### MEMORANDUM OPINION AND ORDER

Pursuant to § 404(b) of the First Step Act, Defendants Eddie Richardson and Carmen Tate move separately for reductions of their sentences based upon their 1995 convictions for conspiracy to distribute and possess with intent to distribute heroin, cocaine, and cocaine base. [1278]; [1311]. For the reasons explained below, this Court denies both motions.

### I.    BACKGROUND

On May 23, 1995, a jury found Defendants Richardson and Tate guilty on Count I of the indictment in this case, a count that charged both Defendants with violating 21 U.S.C. § 846 by conspiring "to possess with intent to distribute and to distribute quantities of cocaine and cocaine base, Schedule II Narcotic Drug Controlled Substances, and heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1)." [1320] at 2–7; *see also* [602]; [605]. The count alleged that Defendants engaged in the conspiracy from 1984 to 1991. Given the controlling case law at the time, Count I did not allege (and the jury made no findings as to) the quantities of controlled substances involved in the

conspiracy. *See* [1278] at 2; [1320] at 2–7. On the conspiracy count, Defendants faced "the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." 21 U.S.C. § 846. In other words, the penalty scheme for violations of 21 U.S.C. § 841 governed Defendants' conspiracy offense.

At Defendants' sentencing hearing, the district court, relying upon presentence investigation reports and the testimony of cooperating witnesses, found by a preponderance of the evidence that, with respect to the conspiracy, "149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable to Defendants."[1] [1278-2] at 6:22–25, 23:12–23. At the time, a conspiracy involving more than 50 grams of cocaine base (*i.e.* crack) or one kilogram of heroin fell under § 841(b)(1)(A) and triggered a mandatory minimum sentence of ten years and a maximum sentence of life. *See* 21 U.S.C. § 841(b)(1)(A) (1991); *see also* 21 U.S.C. § § 846.

Based upon the record and the 1994 Sentencing Guidelines in place at the time, the district court found that the "sentence called for" as to each of the defendants was "life imprisonment." [1278-2] at 29:21–24. Independent of the guidelines, Tate also faced a sentencing enhancement of "a mandatory term of life imprisonment without release" for the conspiracy offense because he had "two or more prior convictions" for felony drug offenses. 21 U.S.C. § 841(b)(1)(A) (1991); *see also* [1278-1] at 2; [1278-2] at 46:9–11. Upon consideration of the relevant sentencing factors under 18 U.S.C.

---

[1] The district court did not make specific factual findings as to the quantity of cocaine powder.

2

§ 3553(a), the district court subsequently sentenced both Defendants to life imprisonment on the conspiracy count. [713]; [723]; [1278-2] at 46:12–15.[2]

In 2010, Congress enacted the Fair Sentencing Act with the stated aim of restoring "fairness to Federal cocaine sentencing." Pub. L. No. 111-220, 124 Stat. 2372. Before the Fair Sentencing Act, § 841 "imposed upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine." *Dorsey v. United States*, 567 U.S. 260, 263 (2012). The Fair Sentencing Act, however, reduced this "crack-to-powder penalty disparity from 100:1 to 18:1." *United States v. Hogsett*, 982 F.3d 463, 465 (7th Cir. 2020), *vacated on denial of reh'g*, 850 F. App'x 452 (7th Cir. 2021).

Congress later enacted the First Step Act of 2018, which among other things, made the Fair Sentencing Act's changes retroactive and "gave courts authority to reduce the sentences of certain crack offenders." *Terry v. United States*, 141 S. Ct. 1858, 1862 (2021); *see also* Pub. L. No. 115-391, 132 Stat. 5194. Pursuant to § 404(b) of the First Step Act, Defendants Richardson and Tate now move for a reduction of their sentences to time served and 360 months, respectively, based upon their convictions on Count I. [1278]; [1311]; [1322] at 5.[3]

---

[2] The jury also found Defendants Richardson and Tate guilty on Count II of the indictment and Richardson guilty on Count III. Upon its review, the Supreme Court vacated Count II and remanded the case to the district court. *Richardson v. United States*, 526 U.S. 813 (1999). The Government dismissed Count II as to both Defendants on remand. [1028]. Richardson's conviction on Count III, and attendant five-year sentence, remained standing.

[3] Defendant Tate initially sought a sentence reduction to twenty years, [1278] at 13, but later updated his request to 360 months, [1322] at 5.

## II.    LEGAL STANDARD

Section 404(b) of the First Step Act permits a defendant convicted of a "covered offense" to seek "a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act" were "in effect at the time the covered offense was committed.'" *United States v. Bethany*, 975 F.3d 642, 650 (7th Cir. 2020) (quoting First Step Act, § 404(b)). A "covered offense" means "a violation of a federal criminal statute, the statutory penalties for which were modified by" certain provisions in the Fair Sentencing Act. First Step Act, § 404(a).

Therefore, for any § 404(b) motion, a district court must begin by determining whether the defendant's offense of conviction qualifies as a "covered offense." If the conviction qualifies, then the court exercises its discretion and determines whether "it *should* reduce the sentence." *United States v. Fowowe*, 1 F.4th 522, 527 (7th Cir. 2021) (emphasis in original) (quoting *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020)). Importantly, the First Step Act never requires a court to reduce the sentence of a defendant convicted of a "covered offense." *See United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020) (per curiam) (holding that a district court "is never required to reduce a sentence under section 404(b).").

In *United States v. Concepcion*, 142 S. Ct. 2389 (2022), the Supreme Court explained how a court should procedurally and substantively evaluate whether to reduce a sentence pursuant to § 404(b) of the First Step Act. The Court held that, procedurally, a court should first calculate the guideline ranges "as if the Fair Sentencing Act's amendments had been in place at the time of the offense." *Id.* at

2402 n.6, 2404. Serving as a "benchmark" in the case, this new range may not reflect anything other than "the retroactive application of the Fair Sentencing Act." *Id.* at 2402 n.6.

Against this "benchmark," the sentencing court must then exercise its traditional discretion and determine whether to impose a reduced sentence. From a substantive perspective, the First Step Act does not "limit the information a district court may use to inform its decision whether and how much to reduce a sentence." *Id.* at 2402. For example, a court may consider any information relevant to the factors set out in 18 U.S.C. § 3553(a), including post-conviction factors such as "evidence of rehabilitation, disciplinary infractions" and even nonretroactive "intervening legal developments." *Id.* at 2401, 2403 n.8; *see also United States v. Newbern*, 51 F.4th 230, 232 (7th Cir. 2022) (discussing *Concepcion*, 142 S. Ct. at 2401–04).[4] As part of this step, the district court "must generally consider the parties' nonfrivolous arguments before it," but it "may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation." *Concepcion*, 142 S. Ct. at 2404.

## III. ANALYSIS

### A. Defendants Remain Legally Eligible for Relief

The threshold issue here is whether the crack offense that served as an object of Defendants' conspiracy constitutes a "covered offense" within the meaning of the

---

[4] The Supreme Court clarified that a district court's discretion to reduce a sentence pursuant to § 404(b) of the First Step Act remains broader than its discretion to reduce a sentence under other types of proceedings, such as one seeking compassionate relief pursuant to 18 U.S.C. § 3582(c)(2) where Congress "expressly cabined district court's discretion by requiring courts to abide by the Sentencing Commission's policy statements." *Concepcion*, 142 S. Ct. at 2401.

First Step Act. The Supreme Court's decision in *Terry v. United States*, 141 S. Ct. 1858 (2021), informs this analysis. In *Terry*, the Court considered a petitioner's motion for a reduced sentence under the First Step Act based upon his 2008 guilty plea to "possession with intent to distribute an unspecified amount" of crack, a "schedule II drug," and attendant 188-month prison sentence. *Id.* at 1861. The Court noted that before the First Step Act's enactment, § 841(a) made it "unlawful to knowingly or intentionally possess with intent to distribute any controlled substance" and § 841(b) added various factors that, if proven, triggered different penalties; these then operated together to create three separate crack offenses: (1) "knowing or intentional possession with intent to distribute" crack of "at least 50 grams," an offense "punishable by 10 years to life" (subparagraph (A) offense); (2) "knowing or intentional possession with intent to distribute" crack of "at least 5 grams," an offense "punishable by 5-to-40 years" (subparagraph (B) offense); and (3) "knowing or intentional possession with intent to distribute" some "unspecified amount of a schedule I or II drug," an offense punishable by "0-to-twenty years" (subparagraph (C) offense). *Id.* at 1862.

Of these three offenses, the punishment for the subparagraph (C) offense remained "exactly the same" after passage of the Fair Sentencing Act. *Id.* at 1863. Because the Fair Sentencing Act "did not modify the statutory penalties" for subparagraph (C) offenses, the Court found that they do not constitute "covered offenses" within the meaning of the First Step Act. *Id.* at 1862–64. By contrast, the Fair Sentencing Act did "modify the statutory penalties" for crack "offenses that

triggered mandatory-minimum penalties," namely, the subparagraph (A) and (B) offenses. *Id.* at 1864. Accordingly, those two offenses constitute "covered offenses" within the meaning of the First Step Act. *Id.*

Here, the Government initially maintained that Defendants' crack offense does not constitute a covered offense, because the Fair Sentencing Act did not modify the penalty for an offense involving twenty-five kilograms of crack. [1294] at 5–7; [1317] at 7–9. It also argued that Defendants lack eligibility because the conspiracy also involved non-covered offenses for heroin and cocaine powder distribution. [1317] at 9–10. Recently, however, the Government and Defendant Tate filed a joint status report explaining that the Government now agrees that Defendant Tate is eligible given *Terry* and emerging consensus among the courts. [1332] at 4.

The Government did not amend its position as to Defendant Richardson, but *Terry* and its progeny establish that both Defendants are eligible for a reduced sentence. *Terry* teaches that eligibility for relief under the First Step Act ultimately hinges upon one question: Did the crack offense trigger a mandatory minimum or not? *See id.* at 1862–64*; cf. id.* at 1867 (Sotomayor, J., concurring in part and concurring in the judgment) (noting that "*everyone* with a pre-August 3, 2010, crack conviction under § 841(b)(1)(A) or § (841)(b)(1)(B)" has "a 'covered offense' and is eligible for resentencing" (emphasis added)). In other words, a court must ask "whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense," not whether the Fair Sentencing Act modified the penalties for petitioner's *specific conduct*. 141 S. Ct. at 1862.

Here, a jury convicted Defendants of conspiracy to possess with intent to distribute and to distribute unspecified amounts of heroin, cocaine, and cocaine base. *See* [1320] at 2–7; [602]; [605]; [1278] at 7; [1311] at 1. Although the indictment did not specify the quantities of drugs involved and the jury did not make findings as to drug quantities, [1278] at 2, [1320] at 2–7, the district court found by a preponderance of the evidence "that 149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable" to each Defendant with respect to the conspiracy offense, *see* [1278-2] at 4:12–16, 6:22–25. Thus, the subparagraph (A) penalties applied, and Defendants' conspiracy involved a crack offense covered by the First Step Act.[5] Both Defendants are eligible for relief under § 404(b) of the First Step Act.

## B. The Factual Record Fails to Warrant Relief

As both Defendants are eligible for relief, this Court must now decide whether to exercise its discretion to reduce their sentences based upon the factual record and the applicable sentencing considerations. Neither Defendant warrants a reduced sentence.

---

[5] The fact that the district court determined the drug quantities, and not the jury, is of no moment. Under then-existing Seventh Circuit precedent, the elements of an offense under § 841(a), such as distribution of a controlled substance or possession with intent to distribute, were "the same regardless of the quantity of drugs involved," and § 841(b), which listed the penalties triggered by specific drug quantities, was a mere "sentencing enhancement provision, not a separate substantive offense." *United States v. Trujillo*, 959 F.2d 1377, 1383 (7th Cir. 1992), *abrogated by United States v. Nance*, 236 F.3d 820 (7th Cir. 2000). At the time, the law "firmly established" that "'facts germane only to sentencing are resolved by the judge, not the jury.'" *United States v. Mojica*, 984 F.2d 1426, 1441 (7th Cir. 1993) (quoting *United States v. Smith*, 938 F.2d 69, 70 (7th Cir. 1991)); *see also United States v. Haymond*, 139 S. Ct. 2369, 2378 (2019). For purposes of eligibility, it also does not matter that Defendants' aggregate sentences included non-covered offenses. *See, e.g., United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020) (holding that a prisoner "was eligible for a sentence reduction under the First Step Act" even though the aggregate sentence for which the prisoner sought relief "included [the prisoner's] sentences for both the . . . covered offenses" and a separate firearms offense.).

### 1.    Eddie Richardson

As set out above, a jury found Defendant Richardson guilty of conspiracy to possess with intent to distribute controlled substances and the original sentencing court found by a preponderance of the evidence that 149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable to Richardson.  Pursuant to 21 U.S.C. § 841(a)(1)(A), these drug quantities carried a statutory penalty of 10 years to life imprisonment.  Based on the 1994 Sentencing Guidelines, the original sentencing court also assigned a base offense level of 38 given the quantities of cocaine base and heroin involved; a 2-point enhancement for possessing dangerous weapons; a 4-point enhancement for holding a leadership role; and a criminal history category of III. [713] at 5; [1317-1]; [1278-2] at 6:2–7.  Under the 1994 Guidelines, this resulted in a sentencing range of life imprisonment, which is the sentence Richardson received. *See* [1317-1]; *U.S. Sentencing Guidelines Manual* (1994).

Later, the Fair Sentencing Act increased the threshold amount of cocaine base required under 21 U.S.C. § 841(a)(1)(A) from 50 grams to 280 grams.  Pub. L. No. 115-391, 132 Stat. 5194.  Here, however, the 25 kilograms of cocaine base far exceeds the new threshold, so 21 U.S.C. § 841(a)(1)(A) still applies with a statutory sentencing range of 10 years to life imprisonment.  Similarly, the Sentencing Guideline range of life imprisonment remains, even if the Fair Sentencing Act's amendments had been in place at the time of the offense.  Accordingly, life imprisonment is the "benchmark" by which this Court evaluates whether it should reduce Richardson's sentence. *Concepcion*, 142 S. Ct. at 2402 n.6

9

Having established the "benchmark," this Court now considers whether it should exercise its discretion to reduce Richardson's sentence. *Id*. at 2402. Looking at the § 3553(a) factors, Richardson's offense of conviction remains as serious today as it was when he was originally sentenced. In fact, the record confirms that the nature of Richardson's conduct included many other aggravating factors that increase the seriousness of the offense. For example, as the Government notes, Richardson's conspiracy offense arose from his position managing drug sales for a street gang that he helped to form and lead. As the Seventh Circuit has held, "it is a serious matter to play an important role in a conspiracy selling an illegal substance," and "the evolving view towards crack-cocaine offenses does not change that." *United States v. Price*, 835 F. App'x 141, 142 (7th Cir. 2021). Adding to the seriousness of his convicted offense, the record shows that the charged conspiracy extended for six to seven years, during which time Richardson earned substantial income from the drug-induced suffering of others in his community. As part of managing drug sales and in his leadership position, Richardson enforced gang rules using a system of punishments referred to as "violations," which including ordering acts of violence such as assault, battery or even worse.[6]

Next, even though the conspiracy conviction included distribution of crack cocaine and powder cocaine, the primary object of the conspiracy remained heroin sales, and the charged conspiracy only extended to crack distribution in its final year.

---

[6] For example, the record includes evidence that Richardson gave two pistols to one of the co-defendants and instructed him to shoot someone for taking a pack of heroin, and, in another instance, the evidence shows Richardson beat someone with a baseball bat, breaking his arm.

The Fair Sentencing Act did not affect the offenses involving heroin. And the original sentencing court made a reasonable factual finding that the conspiracy involved 149 kilograms of heroin.[7] Considering only this heroin amount, the guidelines—both at the time of sentencing and today—still assign a base level of 38. Similarly, under today's guidelines, the use of dangerous weapons and a leadership role still result in a 6-point enhancement for a total offense level of 44. An offense level of 44, both at the time of sentencing and today, results in a guideline range of life imprisonment regardless of a defendant's criminal history category. Thus, even disregarding any findings as to cocaine base (or cocaine powder), Richardson's conviction based upon the heroin alone still supports the life sentence he received.

Upon full consideration of the relevant sentencing factors under 18 U.S.C. § 3553(a), this Court finds nothing in the record now to warrant a sentence below the guideline range of life. Of course, the guideline ranges today are not mandatory as they were in 1995 when Richardson was sentenced. *See United States v. Booker*, 543 U.S. 220, 245 (2005). But other defendants convicted of similar crimes solely involving similar quantities of heroin do not have the option to seek a reduced sentence pursuant to § 404(b) of the First Step Act. To reduce Richardson's sentence pursuant to § 404(b) because his crime *also* involved cocaine base would result in an unwarranted windfall for Richardson and create an unjust disparity with other similar defendants convicted of commensurate offenses. More importantly, any

---

[7] Richardson does not raise the *Apprendi* arguments that Defendant Tate raised. *See discussion infra.* Nonetheless, in its discretion, the Court declines to apply *Apprendi* retroactively to Richardson for the same reasons it declines to apply it retroactively for Tate.

reduction in Richardson's sentence would also be grossly inadequate to reflect the seriousness of his offense, promote respect for the law, and provide just punishment.

In requesting a reduced sentence to time served, Richardson points to his good behavior and rehabilitation while in prison, including pursuing a GED, participating in various programs, and proving himself to be a trustworthy and efficient worker. [1311] at 7; [1311-1]. He also submits a letter of commendation from Federal Bureau of Prisons' Supervisory Correctional Systems Specialist S. Morin who wrote about the important job positions Richardson has held while incarcerated and the leadership, work ethic and dependability he has exhibited over the years. [1311-2]. Morin concluded that Richardson's conduct shows his respect for professional staff-to-inmate relationships and that he has used his time in custody to better himself. *Id.* As purported evidence of a reduced recidivism risk, Richardson also points to his current incarceration in a minimum-security prison and his more advanced age. [1311] at 8.

The Court finds Richardson's rehabilitation record laudable, but these facts and his age (as well as any reduced need to address specific deterrence or risk of recidivism) constitute only some of the factors in fashioning a just sentence. Richardson's sentence must also serve the purposes of general deterrence, respect for the law, and just punishment for his offense. As detailed above, the record contains a multitude of aggravating factors that increased the gravity of an already serious offense. Richardson's offense was not a victimless crime, particularly given the quantity of dangerous substances involved, the length of the conspiracy, and the use

of violence. The life sentence that Richardson received properly reflects the human misery he inflicted upon others by overseeing the distribution of heroin and other drugs into the community.

Finally, Richardson also points to various health issues he has suffered, including bronchitis, breathing issues, and contracting Covid-19. [1311] at 6; [1316]. The Court has considered these health issues and the effects of the Covid-19 pandemic on inmates, generally, and on Richardson, specifically, but this Court does not find that these factors warrant reducing Richardson's sentence considering the many aggravating factors the Court addressed above. Overall, Richardson's post-conviction conduct (no matter how admirable) and his age and current health struggles fail to outweigh the seriousness of the offense of conviction, and the other § 3553(a) factors that weigh in favor of continued incarceration.

Accordingly, the Court declines to exercise its discretion to reduce Richardson's sentence and denies Richardson's motion [1311].

### 2. Carmen Tate

Just as with Richardson, the guideline range for Tate would have remained life imprisonment even if the Fair Sentencing Act's amendments had been in place at the time of the offense. This is so because, like Richardson, the jury found Tate guilty of conspiracy to possess with intent to distribute controlled substances and the original sentencing court found by a preponderance of the evidence that 149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable to Tate; thus making him subject to 21 U.S.C. § 841(a)(1)(A). The sentencing court also assigned to Tate a base offense level of 38 given the quantities of cocaine base and

13

heroin involved, a 2-point enhancement for possessing dangerous weapons, and another 4-point enhancement for holding a leadership role (Tate also had a Category V criminal history), all resulting in an offense level of 44 with a guideline range of life imprisonment. Therefore, as with Richardson, life imprisonment is the "benchmark" guideline range against which the Court evaluates whether to reduce Tate's life sentence. *Concepcion*, 142 S. Ct. at 2402 n.6.

In addition to a guideline range of life imprisonment, however, Tate also faced a statutory mandatory life sentence under § 841(a)(1)(A) because he had two prior felony drug offenses. *See* [1278-2] at 46:9–11; [1278-1] at 2; 21 U.S.C. § 841(b)(1)(A) (1991) ("If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release"). The prior drug offenses were two 1979 state convictions for possession of a controlled substance on which he received 2 years' probation for each conviction to run concurrently. [322]; [1278-1] at 4.

At the time of his sentencing, the penalty enhancement under § 841(b)(1)(A) applied to any "felony drug offenses." 21 U.S.C. § 841(b)(1)(A) (1994) (current version at 21 U.S.C. § 841(b)(1)(A) (2022)). Section 401 of the First Step Act of 2018, however, changed the provision to require a "serious drug felony," which it defined as an offense described in 18 U.S.C. § 924(e)(2) in which: "(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense."

14

First Step Act of 2018, § 401(a)(1), PL 115-391; *see also* 21 U.S.C. § 841(b)(1)(A); 21 U.S.C. § 802(57). Under this new definition of "serious drug felony," neither of Tate's prior state law drug offenses qualifies because he served no prison term. [1278-1] at 4. And without the two prior drug offenses, Tate would have faced a statutory mandatory sentence of ten years to life under 21 U.S.C. § 841(B)(1)(A) at the time of his sentencing (and this remains the statutory range today).

The implications of this record on the Court's discretion to reduce Tate's sentence warrant some discussion. The change to the qualifying prior felony offenses came *after* Tate's original sentence and does not apply retroactively. *See, e.g., United States v. Coleman*, 830 F. App'x 769, 770 (7th Cir. 2020) (holding that the § 401 First Step Act modification postdates the Fair Sentencing Act and "is *not* retroactive.") Nonetheless, as it relates to a motion for a reduced sentence under § 404(b), the Seventh Circuit has made clear that a district court may factor in nonretroactive changes to statutory minimum sentences for the covered offense. *See, e.g., United States v. Moore*, 50 F.4th 597 (7th Cir. 2022) (affirming a sentence reduction (albeit less than the defendant wanted) where the defendant had faced a mandatory life sentence under § 841(b)(1)(A) because of four prior felonies). In other words, if Tate's conviction only related to cocaine base, this Court would have discretion to factor in this nonretroactive change in statutory minimums in deciding whether to reduce his sentence.

Here, however, Tate's conviction also related to heroin, a noncovered offense, and the amount of heroin independently called for a statutory mandatory life

sentence based upon his two prior felony drug convictions. An unpublished 2020 Seventh Circuit opinion suggests that a district court lacks discretion to reduce the sentence in such a circumstance. *United States v. Johnson*, 830 F. App'x 772, 773 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2840 (2021). Specifically, *Johnson* affirmed a district court's conclusion that it "lacked discretion to reduce" a defendant's prison term for "conspiracy to distribute more than 5 kilograms of powder cocaine and more than 50 grams of crack cocaine" because, regardless of whether his "conviction was for a covered offense," the defendant, based upon his two prior drug convictions, nevertheless "faced a mandatory life sentence for his conspiracy conviction for powder cocaine under § 841(b)(1)(A)(ii)—a statutory provision that the Fair Sentencing Act left untouched." *Id.* at 773.[8]

The Seventh Circuit's more recent decision in *United States v. McSwain*, 25 F.4th 533 (7th Cir. 2022), however, suggests a more nuanced approach. There, a defendant was convicted in 2007 for conspiring to distribute and possess heroin and cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(i) and (b)(1)(A)(iii). *Id.* at 536. Because he had a prior state law felony drug conviction, he faced a twenty-year statutory minimum on the conspiracy count, which is the sentence he received. *Id.* In 2019, the defendant sought a reduced sentence pursuant to § 404(b) of the First Step Act. *Id.* The district court denied the motion, reasoning that it lacked discretion to reduce the sentence below twenty years because the defendant "was

---

[8] The court did not elaborate on whether any intervening changes to statutory mandatory minimums would have changed the mandatory minimum the defendant would have face if sentenced today. But the court's holding, at the very least, suggests that the district court did not have discretion to apply such intervening changes in light of the noncovered offense.

specifically found guilty of a quantity of heroin that qualified him for a mandatory minimum sentence." *Id.* (quoting the district court's opinion).

On appeal, the Seventh Circuit vacated the decision, finding that the district court did, in fact, have discretion to reduce the sentence. *Id.* It noted that intervening law, specifically *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020)—which limited when a state felony conviction qualifies as a predicate felony conviction for determining statutory mandatory minimum sentences—"had the potential to disqualify" the defendant's prior state law conviction and thereby remove the statutory enhancement and mandatory minimum that bound the original sentencing court. *McSwain*, 25 F.4th. at 539–40. It held that this intervening change in the law stands "separate and apart from any concerns that the First Step Act did not affect heroin convictions" and that "the disqualification of the prior offense in question would have radically changed the sentencing landscape." *Id.* at 540. Ultimately, the court emphasized that a district court has discretion to decide not to apply intervening legal changes such as *Ruth*, but it held the "district court's decision not to exercise discretion—apparently because it thought it had no such discretion to exercise—does, however, amount to an abuse of discretion." *Id.*

Pursuant to *McSwain*, this Court finds that it has discretion to consider the intervening changes in law regarding what felony offenses qualify for statutory enhancements under 21 U.S.C. § 841(b)(1)(A). Pursuant to this discretion, the Court

17

will factor in the statutory sentencing range of ten year to life as it considers the other § 3553(a) factors to decide whether it should, in fact, reduce Tate's sentence.[9]

Tate asks the Court to reduce his sentence to 360 months (of which he has served over 28 years as of this opinion). [1322] at 5. In support, he offers multiple arguments. First, he focuses on the fact that the sentencing judge, not a jury, determined the quantities of drugs for which he was responsible, and applied only a preponderance standard. [1278] at 5–7; [1295] at 5–6. Tate argues that pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013), the Constitution requires that a jury find, beyond a reasonable doubt, any fact that would increase a statutory maximum or minimum penalty. Tate asks this Court to apply *Apprendi* and *Alleyne* here and re-sentence him because the Government did not properly establish a specific quantity of drugs. [1278] at 6. This would result in a conviction under 21 U.S.C. § 841(b)(1)(C), instead, and a statutory maximum sentence of 30 years.[10]  [1295] at 1 n.1.

In response, the Government argues that the First Step Act does not authorize the Court to apply *Apprendi* and *Alleyne* retroactively to reduce a defendant's sentence for a covered offense. [1294] at 9. Not so. As explained above, § 404(b) of the First Step Act permits, but does not require, district judges to apply intervening

---

[9] Tate does not ask the Court to consider this intervening change in law, but instead offers other reasons to reduce his sentence, which the Court considers below. The Court is not confined to just the parties' arguments, however, since its task remains to "consider a range of factors to determine whether a sentence imposed is sufficient, but not greater than necessary, to fulfill the purposes of § 3553(a)." *Hudson*, 967 F.3d at 609.

[10] The thirty year maximum under § 841(b)(1)(C) applies to defendants with two prior felony convictions. If one disregards Tate's prior felony convictions as discussed above, the current statutory maximum sentence would fall to 20 years.

judicial decisions such as *Apprendi*. *See Fowowe*, 1 F.4th at 532; *United States v. Cholson*, No. 96-CR-533, 2022 WL 17718356, at *2 n.4 (N.D. Ill. Dec. 14, 2022) (holding that, on a § 404(b) motion, the court has discretion to consider *Apprendi* and *Alleyne*).

Nonetheless, the Court declines to apply *Apprendi* and *Alleyne* retroactively to Tate. Although a jury did not make factual findings on the quantities of drugs, the quantities that the sentencing judge found fall well beyond the threshold amounts that would have reduced any applicable penalties. Most notably, the heroin quantity the judge found—149 kilograms—was reasonable based on the record and remains markedly higher than the 1-kilogram threshold required today for § 841(b)(1)(A) penalties to apply. It also stands markedly higher than the threshold amount that warrants a base offense level of 38 under both the guidelines in effect at the time and those in effect today. *Compare U.S. Sentencing Guidelines Manual* § 2.D.1.1(c)(1) (1994) (30-kilogram threshold) *with U.S. Sentencing Guidelines Manual* § 2.D.1.1(c)(1) (2021) (90-kilogram threshold).

Overall, if Tate's convicted offense had only involved the heroin, the Judge's pre-*Apprendi* drug quantity findings would stand, and he would not have § 404(b) of the First Step Act as a procedural mechanism to seek a reduced sentence. Based upon the entire record, this Court declines to give him the retroactive benefit of *Apprendi* and *Alleyne* just because his conduct also involved cocaine base. To do so

would result in an unwarranted windfall for him, and otherwise remains inconsistent with the relevant § 3553(a) factors.[11]

Next, Tate seeks a sentence reduction based upon his experiences growing up and his positive rehabilitation and conduct over his decades in prison. As for his pre-conviction circumstances, he offers evidence of a troubled homelife living with a stepfather who regularly abused him, his siblings, and his mother, both physically and mentally. [1278] at 8. His father also frequently made him skip school to work without pay at the family business, and his abusive childhood led him to drinking and drugs by age 11. *Id.* at 8–9. When he was 13 years old, the state of Illinois sentenced him to eight months in juvenile detention for running away from home; merely two weeks after his release from detention, he was again incarcerated at a juvenile correctional facility where he says he was injected with a powerful antipsychotic to punish and control him when he misbehaved. *Id.*; [1278-4].

Tate contrasts his troubled childhood with his behavior since his incarceration. He argues that he has shown exemplary behavior, with no disciplinary infractions while incarcerated; he completed treatment programs for pro-social behavior as well as 50 educational courses; and he has served as a mentor and counselor to other inmates. [1278] at 10–11; [1278-3]; [1278-5]. He also emphasizes his demanding and steady jobs working at the Unicor Postal Insert factory, where he has received "outstanding" performance scores, and used his earnings to pay over $17,000 towards the $25,000 fine assessed against him as part of his sentence. [1278] at 11; [1278-3].

---

[11] Likewise, this Court has considered, but declines, to reduce his sentence based upon the new definition of a "serious" drug felony.

Tate also points to the strong family network that he maintains including his contact with his children, grandchildren and other family members. [1278] at 11–12. He offers a letter from his sister with whom he communicates weekly, as well as his brother. *Id.*; [1278-6]; [1278-7]. Tate's sister writes that Tate has often expressed remorse for his wrong doings, shows an upbeat and positive attitude, and that she will give him her full support if he is released including allowing him to reside with her. [1278-6]. His brother offers similar sentiments. [1278-7]. Tate argues that his conduct throughout incarceration coupled with his current age indicates a lower risk of recidivism and demonstrates that a life sentence is no longer warranted, particularly given the high cost of incarceration for aging inmates. [1278] at 12.

The Court acknowledges the struggles Tate suffered as a child and teenager,[12] the letters of family support, and his good conduct while incarcerated. But this Court must also weigh these factors against the serious nature of Tate's offense of conviction. In doing so, the record fails to warrant any reduction in his sentence. Like Richardson, the record shows that the Tate's criminal conduct endured for years, generating him substantial income from the drug-induced suffering of others. Tate likewise played a managing role in the violent street gang and its drug sales. As the original sentencing judge found, Tate's relevant conduct earned him guideline enhancements for a leadership role in the gang, and for possessing, using, and directing the use of dangerous weapons. [1278] at 25:5–12; 27:14–19. Even acknowledging his challenges as a youth, the record did, and still does, warrant his

---

[12] The original sentencing judge also properly accounted for these childhood factors in the prior proceedings. [1278-2].

life sentence. *See* [1278-2] at 46:8 (finding that even if the Guidelines and statute did not make life mandatory for Tate, "life imprisonment is appropriate."); 18 U.S.C. § 3553(a).

## IV.   CONCLUSION

For the reasons explained above, this Court denies Defendant Richardson's motion for relief [1311] and denies Defendant Tate's motion for relief [1278].

Dated: February 16, 2023

                                        Entered:

                                        _____

                                        John Robert Blakey
                                        United States District Judge